# Authority of the Customs Service to Seize or Forfeit Property Pursuant to 21 U.S.C. § 881

The Customs Service does not have independent authority to make seizures or forfeitures pursuant to 21 U.S.C. § 881. Accordingly, the Customs Service should seize or forfeit property pursuant to that section only under the supervision of the Drug Enforcement Administration and by direct or derivative designation of the Attorney General.

The proceeds of property forfeited after a seizure by the Customs Service must be deposited in the Customs Forfeiture Fund, rather than in the Department of Justice Assets Forfeiture Fund, when the seizure was made under a law administered or enforced by Customs, or custody was maintained by Customs, regardless of whether the forfeiture was handled by Justice.

November 23, 1988

MEMORANDUM OPINION FOR THE ASSOCIATE ATTORNEY GENERAL

## Introduction

This memorandum responds to your request that this Office consider (1) whether the United States Customs Service has independent authority to seize and forfeit property pursuant to 21 U.S.C. § 881; and (2) whether property forfeited under 21 U.S.C. § 881 may be deposited into the Customs Forfeiture Fund maintained under the authority of 19 U.S.C. § 1613b. These questions were first posed by the Administrator, Drug Enforcement Administration ("DEA"),[1] and have been the subject of memoranda from the DEA, the United States Customs Service ("Customs" or "Customs Service") and the Department of Treasury to this Office over the past year.[2] In addition, these questions have caused disagreement between field offices of DEA and Customs during the past several months, and the United States Attorneys in several districts have been called upon to mediate the disputes.

Section 881 of the Controlled Substances Act generally provides statutory authority to seize and forfeit the proceeds of drug transactions and the property used

---

[1] Memorandum for the Assistant Attorney General, Office of Legal Counsel, from John C. Lawn, Administrator, DEA, *Re: U S Customs Authority in Matters Relating to 21 U S C. § 881* (Nov 3, 1986).

[2] *See, e.g.*, Memorandum for Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, from Dennis F Hoffman, Chief Counsel, DEA, *Re U.S. Customs Authority in Matters Relating to 21 U S C § 881* (June 2, 1987) ("Hoffman Memo"); Memorandum for Douglas W. Kmiec, Deputy Assistant Attorney General, Office of Legal Counsel, from Michael H. Lane, Acting Commissioner of Customs, *Re · Customs Seizures under 21 U S C § 881* (Apr. 5, 1988) ("Lane Memo"); Memorandum for Douglas W. Kmiec, Deputy Assistant Attorney General, Office of Legal Counsel, from Selig S. Merber, Assistant General Counsel, Department of the Treasury, *Re. U S. Customs Service Use of 21 U.S.C. § 881* (June 6, 1988).

to facilitate such transactions. Although this Office has indicated in prior opinions that Customs does not have independent title 21 *seizure* authority,[3] and we have no basis to disturb that opinion, we have never specifically addressed whether Customs has independent *forfeiture* authority under 21 U.S.C. § 881 or the extent to which property forfeited under section 881 may be deposited in the Customs Forfeiture Fund ("Customs Fund"). The DEA contends that Customs has no independent forfeiture authority under section 881 because Congress has designated the Department of Justice as the authority responsible for enforcing the federal drug laws and because section 881 specifically confers forfeiture authority only upon the Attorney General. The DEA further contends that property forfeited under section 881 may not be deposited into the Customs Fund because Customs is not the proper authority to perform seizures under these drug laws. In contrast, Customs and the Department of Treasury maintain that section 881 provides Customs with independent forfeiture authority and that any property seized by Customs must be deposited into the Customs Fund.

For the reasons set forth below, we conclude that Customs does not have independent forfeiture authority under section 881. In 1973, Reorganization Plan No. 2 transferred drug enforcement authority to the Department of Justice. While Customs' limited independent authority to seize drugs under laws other than title 21 is acknowledged by this Plan, Customs is required to turn over to the Department of Justice all drugs and related evidence. Customs agents can only seize and forfeit property pursuant to section 881 when they assist the DEA under designation by the Attorney General. As we discuss below, the 1984 and 1988 amendments to section 881 confirm our conclusion that the Attorney General is solely responsible for seizing, forfeiting and, in the first instance, disposing of property forfeited under that statute.

The second issue, pertaining to the Customs Forfeiture Fund, poses a closer question. For the reasons set forth below, however, we conclude that under 28 U.S.C. § 524(c)(10) the proceeds of property forfeited after a seizure by Customs must be deposited in the Customs Fund when the seizure was made by Customs under a law administered or enforced by Customs, or custody was maintained by Customs, regardless of whether the forfeiture was handled by the Department of Justice under section 881.[4]

---

[3] *See, e g ,* Memorandum for the Attorney General, from Theodore Olson, Assistant Attorney General, Office of Legal Counsel, *Re Request by the Department of Justice for Assistance from the Department of Treasury in the Enforcement of the Controlled Substances Act, 21 U S C § 801 et seq , and the Controlled Substances Import and Export Act, 21 U S.C § 951 et seq* (Dec. 23, 1983) ("Olson Memo") (courts would probably uphold a grant of limited title 21 authority granted to Customs officials acting under the supervision of DEA personnel); Memorandum for the Deputy Attorney General from Douglas W Kmiec, Deputy Assistant Attorney General, Office of Legal Counsel, *Re. United States Customs Service Jurisdiction over Title 21 Drug Offenses* (June 3, 1986) ("Kmiec Memo") (19 U.S C. §§ 1589 and 1589a provide warrant and arrest authority to Customs, but do not alter its drug-related authority under Reorganization Plan No. 2 of 1973).

[4] As this opinion was being finalized, the President signed into law the Anti-Drug Abuse Act of 1988, Pub L No. 100–690, 102 Stat 4181 (1988) ("1988 Drug Act") We have reviewed the new law's provisions, and incorporated them into our analysis.

Two provisions contained in the 1988 Drug Act are worthy of additional comment here Section 6078 of title VI provides for an addition to the end of part E of the Controlled Substances Act, 21 U.S.C. §§ 871–887, as follows:

## Discussion

### *I. Forfeiture Authority Pursuant to 21 U.S.C. § 881*

#### A. *Statutory Language*

Section 881 provides the Attorney General broad authority both to seize and to forfeit specified controlled substances as well as certain property connected with the manufacture, distribution or sale of those substances,[5] and further provides for the disposition of the forfeited property.[6] In addition, section 881 grants the Attorney General the authority to use the proceeds from the sale of forfeited property to pay many of the expenses pertaining to the seizure, maintenance, and sale of the property.

Property may be forfeited pursuant to 21 U.S.C. § 881 through two separate processes. Under some circumstances, property may be forfeited administra-

---

[4] (. . . continued)

> The Attorney General and the Secretary of the Treasury shall take such action as may be necessary to develop and maintain a joint plan to coordinate and consolidate post-seizure administration of property seized under this title, title III, or provisions of the customs laws relating to controlled substances.

Similarly, section 6079 of title VI of the 1988 Drug Act provides that the Attorney General and the Secretary of the Treasury are to consult and prescribe regulations for expedited administrative procedures for certain seizures under several acts, including both the Controlled Substances Act and the Tariff Act of 1930

We believe that neither of these provisions constitutes a grant of additional seizure or forfeiture authority to Customs. It is significant in this regard that both provisions are procedural, and both specifically refer to the customs laws. The plain language of these provisions indicates that Congress has acknowledged here, as it has elsewhere, that Customs agents, acting under the customs laws, have some seizure authority in drug cases. Nothing in the provisions suggests that Congress meant to grant Customs seizure authority under section 881 We note that the complete legislative history of the 1988 Drug Act is not yet available for our review from the Department of Justice's Office of Legislative Affairs; we note further, however, that legislative history cannot be used to subvert the plain meaning of the statutory text.

[5] Section 881(a)(1) through (5) provides for the forfeiture of controlled substances, material and equipment, containers, conveyances, and records involved in drug trafficking. Section 881(a)(6) provides for the forfeiture of all assets—including moneys, negotiable instruments and securities—furnished or intended to be furnished in exchange for illegal drugs or traceable to such an exchange, as well as all such assets used or intended to be used to facilitate any drug violations. Section 881(a)(7) and (8), added as part of the Comprehensive Crime Control Act of 1984, Pub. L. No. 98–473, tit. II, §§ 201-2304, 98 Stat. 1976–2193 (1984), grants authority to seize and forfeit real property used or intended to be used in a drug felony, and controlled substances possessed in violation of the Act. Section 881(a)(7) was further amended by the 1988 Drug Act to make clear that that section included leasehold interests. Section 881(a)(9), added as part of the 1988 Drug Act, grants authority to seize and forfeit certain chemicals, *drug manufacturing equipment, and related items* which have been or are intended to be imported, exported, manufactured, possessed or distributed in violation of specified felony provisions.

[6] Section 881(e)(1), as amended by the 1988 Drug Act, grants the Attorney General authority to retain the seized and forfeited property for official use, transfer the property pursuant to section 616 of the Tariff Act of 1930 to any federal agency, or to any state or local agency that participated directly in the seizure or forfeiture; sell the property; require the General Services Administration to handle the disposal; forward it to the DEA for disposition; or in certain circumstances, transfer the property or proceeds to foreign countries that participated in the seizure or forfeiture. Section 881(e)(2)(A) sets forth the permissible uses of proceeds from the sale of forfeited property, including certain property management and sale expenses and payments to informants Section 881(h) codifies the "relation back" doctrine, which holds that the government's interest in the seized property vests in the United States at the time of the act giving rise to the forfeiture under section 881. Section 881(i) provides for a stay of civil forfeiture proceedings when the government has filed a criminal action relating to the civil case.

269

tively, that is, forfeited without judicial action.[7] A judicial forfeiture proceeding may also be filed under section 881 by the United States Attorney in federal district court.[8]

We are advised informally by Customs that they may currently seek to rely on section 881 for forfeiture authority in a variety of situations. For example, Customs might stop and search a vessel pursuant to the customs laws,[9] find illegal drugs, and prepare an administrative forfeiture action pursuant to 21 U.S.C. § 881, even though in this circumstance, Customs has forfeiture authority not dependent on section 881.[10] In other cases, however, Customs may not have alternative forfeiture authority. For example, this situation may arise when Customs agents are conducting a search while investigating a suspected violation of a law enforced by Customs, such as the Currency and Foreign Transactions Reporting Act, 31 U.S.C. §§ 5311–5326, and agents discover cash that is evidence of a federal drug law violation. If no currency violations are found and the drug violation is the only viable case, Customs may desire to handle the forfeiture action administratively within Customs or, if the cash amount is over $100,000 or a claim and cost bond is filed, refer the action to the United States Attorney. In either case, the forfeiture is sought pursuant to section 881, the only forfeiture statute available under the facts of the case. Finally, contrary to our conclusion that Customs lacks title 21 enforcement authority, Customs agents in some federal districts may seek to conduct title 21 drug investigations without DEA designation, and forfeit property solely on the basis of their asserted authority under section 881.[11]

In determining whether Customs has the independent forfeiture authority under 21 U.S.C. § 881 that it would need to have in the above and analogous ex-

---

[7] Section 881(d) adopts by incorporation the procedures established under the customs laws; these procedures authorize the administrative forfeiture of property that does not exceed $100,000 in value, conveyances that are used to transport controlled substances, and illegally imported goods. 19 U.S.C. § 1607. However, anyone who files a timely claim and posts a cost bond in an administrative forfeiture proceeding can move the action into federal district court. 19 U S.C. § 1608.

[8] A civil judicial forfeiture proceeding is required where the value of the property exceeds $100,000 and the property is not a conveyance or an illegally imported item, 19 U.S.C. § 1610; where the defendant has filed a claim and cost bond in an administrative forfeiture proceeding, 19 U.S.C. § 1608; or if the United States Attorney decides that the property should not be seized until a warrant of arrest in rem is issued pursuant to the filing of a formal complaint.

[9] Pursuant to 19 U.S.C. § 1581(a), Customs officers may, at any time, board any conveyance (e.g., a vessel or vehicle) within a customs-enforcement area and examine the manifest and other documents, as well as inspect and search every part of that conveyance. If, upon examination of the conveyance it appears to the Customs officers that a violation of federal laws is being or has been committed so as to render the conveyance or anything aboard it liable to forfeiture, the officers may, pursuant to 19 U.S.C. § 1581(e), seize the conveyance.

[10] Under 19 U.S.C. § 1595a(a), Customs is authorized to seize and forfeit any vessel, vehicle, animal, aircraft, or other thing used to facilitate the importation into the United States of any article contrary to law Because the importation of illegal drugs into the United States is contrary to law, a boat used to smuggle drugs into the United States may be seized by Customs under section 1595a(a).

[11] We are also apprised that, on occasion, Customs will "adopt" cases investigated and prepared by state or local law enforcement officers, forfeit the seized property administratively under section 881, and then transfer a portion of the proceeds to the state or local law enforcement authorities who made the seizure in accordance with 19 U.S C. § 1616a(c).

270

amples, we begin by examining the plain language of that statute.[12] The text of section 881 reveals that Congress intended the Attorney General, and not Customs, to handle the drug forfeiture functions outlined in that section. For example, section 881(b), which authorizes seizure of property subject to forfeiture under the Controlled Substances Act, specifically mentions only the Attorney General, not the Customs Service or any other federal agency. Similarly, section 881(c), providing for the custody of seized property, grants such authority only to the Attorney General. Moreover, section 881(e), authorizing the disposition of property seized under the Controlled Substances Act, grants this power specifically and solely to the Attorney General. The exclusive forfeiture role of the Attorney General under section 881 was reemphasized when, in 1984, Congress amended section 881, but continued to place all seizure and forfeiture responsibility under the Controlled Substances Act solely with the Attorney General. For example, Congress amended section 881(e)(1) to provide the Attorney General authority to transfer the custody or ownership of any forfeited property to any federal agency or to any state or local agency that directly participated in the seizure or forfeiture, yet continued to recognize that the Attorney General is in exclusive control of the forfeiture and disposition of forfeited property under the Controlled Substances Act. Similarly, amendments to section 881 contained in the 1988 Drug Act preserve the Attorney General's exclusive forfeiture authority.[13]

Congress' intent that the Attorney General hold exclusive authority to seize and forfeit property under section 881 is also evident in the broader statutory scheme of the Controlled Substances Act. No other section of the Act grants authority to the Customs Service to seize and forfeit property under the Act.[14] Indeed, section 878(a)(4) affirmatively grants authority to "make seizures of property pursuant to the [Controlled Substances Act]" only to officers and employees of the DEA or any state or local law enforcement officer designated by the Attorney General to make such seizures. Congress amended section 878 in 1986,[15] yet did not include Customs in this specific, affirmative grant of authority. Sim-

[12] The first rule of statutory construction is to examine the language of the statute itself. *See, e.g., Touche Ross & Co v. Redington,* 442 U.S. 560, 568 (1979); *Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U S 322, 330 (1978).

[13] We note that section 881(l), added as part of the 1988 Drug Act, authorizes the Attorney General to delegate certain of his section 881 functions, by agreement, to the Postal Service. The 1988 Drug Act also amended 18 U.S.C. § 3061 to grant the Postal Service seizure authority with respect to postal offenses, and "to the extent authorized by the Attorney General pursuant to agreement between the Attorney General and the Postal Service, in the enforcement of other laws of the United States, if the Attorney General determines that violations of such laws have a detrimental effect upon the operations of the Postal Service." Section 881(e)(2)(B), as amended by the 1988 Drug Act, provides that the proceeds of forfeitures conducted by the Postal Service shall be deposited in the Postal Service Fund.

[14] Part E, entitled "Administrative and Enforcement Provisions," contains several sections, none of which refers to anyone other than the Attorney General with respect to enforcement authority under the Controlled Substances Act. For example, section 871 empowers the Attorney General to delegate any of his functions under the Act to any officer or employee of the Department of Justice, and to promulgate and enforce any rules, regulations and procedures which he deems necessary for efficient execution of his functions under the Act. 21 U.S.C. § 871(a)-(b). Section 875 authorizes the Attorney General to hold hearings, sign and issue subpoenas, administer oaths, examine witnesses and receive evidence anywhere in the United States in carrying out his functions under the Act.

[15] 21 U.S.C § 878 was amended in 1986 by Pub. L. No. 99-570.

271

ilarly, 21 U.S.C. § 873(b) vests only in the Attorney General the authority to request assistance from other federal agencies to carry out his functions under the Controlled Substances Act.[16]

The only part of section 881 that makes any reference to the Customs Service is section 881(d), which sets forth "other laws and proceedings applicable" to civil forfeiture proceedings under the Controlled Substances Act. Customs relies on that section to argue that it has section 881 forfeiture authority.[17] The argument is unavailing. Section 881(d) merely provides that the forfeiture procedures of the customs laws are applicable to forfeitures conducted under section 881; it does not confer on Customs itself any forfeiture authority. The statute reads as follows:

> The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof; except that such duties as are imposed upon the customs officer or any other person with respect to the seizure and forfeiture of property under the customs laws shall be performed with respect to seizures and forfeitures of property under this subchapter by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General, *except to the extent that such duties arise from seizures and forfeitures effected by any customs officer.*

21 U.S.C. § 881(d) (emphasis added).

Contrary to Customs' position, section 881(d) is correctly read to be a procedural provision, and not an affirmative grant of authority. The first half of the section, which ends with the phrase "insofar as applicable and not inconsistent with the provisions hereof," mandates that the procedures governing the seizure and forfeiture of property under the customs laws shall also govern, to the extent not inconsistent, seizures and forfeitures arising under the Controlled Substances Act. Thus, section 881(d) explicitly incorporates by reference a statutory procedural scheme already in existence.[18] The second half of the section, up until the final phrase, states that the procedural duties connected with seizures and forfeitures under the Controlled Substances Act shall be handled by officers, agents,

---

[16] In the Olson Memo, we concluded that the Attorney General could likely designate Customs agents to exercise title 21 authority by virtue of this provision.

[17] *See* Lane Memo, *supra* note 2, at 3

[18] These procedural provisions are codified at 19 U.S.C. §§ 1602–1621.

or other persons authorized or designated by the Attorney General. The final phrase of section 881(d) merely qualifies that procedural mandate by providing that the incorporated Customs procedures shall be followed by the Attorney General's agents or designee with respect to seizures and forfeitures under the Controlled Substances Act except to the extent that such duties arise from seizures and forfeitures effected by any Customs officer, acting as a Customs officer, rather than as a designee of the Attorney General.[19]

Our interpretation of the exception clause in section 881(d) as a procedural provision is supported by the fact, discussed above, that the Controlled Substances Act as a whole places *all* enforcement authority under the Act's provisions with the Attorney General. Any limit to this broad and exclusive mandate would be a significant departure from the overall enforcement scheme. We therefore find the proposition that Congress would place within a clearly procedural section a substantive provision so significantly at odds with the Attorney General's title 21 authority to be untenable.

This interpretation is consistent with the realignment of drug enforcement and seizure authority which took place proximate to the enactment of the Controlled Substances Act (including section 881) in 1970. Prior to 1968, the Department of Treasury was the agency charged with primary responsibility for enforcing the federal drug laws. Within the Department of Treasury, the United States Customs Service had the responsibility for enforcing all laws pertaining to the smuggling of drugs into the United States, while Treasury's Bureau of Narcotics was charged with enforcing all laws relating to drug trafficking. Reorganization Plan No. 1 of 1968, 3 C.F.R. 1061 (1966–1970), *reprinted as amended in* 5 U.S.C. app. at 1334, *and in* 82 Stat. 1367 (1968), transferred the drug trafficking enforcement functions of the Department of Treasury's Bureau of Narcotics to the Attorney General, to be handled within the Department of Justice by a newly created Bureau of Narcotics and Dangerous Drugs. The responsibility for investigating smuggling, on the other hand, remained with Customs within the Treasury Department, thereby raising the possibility of jurisdictional disputes regarding the respective responsibilities of the Justice and Treasury Departments in the context of certain drug investigations. Because the Customs Service retained investigative jurisdiction to enforce the federal smuggling laws, it would have been entirely reasonable for Congress to include in the forfeiture provision of the Controlled Substances Act a proviso like that in the final clause of section 881(d), recognizing that the Attorney General's new, vast and exclusive seizure

---

[19] As already indicated in the text, Customs has no independent title 21 seizure or forfeiture authority. Therefore, for a seizure or forfeiture to be effected as suggested by the final clause, it must be pursuant to a source of Customs authority other than the Controlled Substances Act Nevertheless, it was important for Congress to include the final clause in section 881(d) to distinguish the situation where Customs acts on its own authority under the customs laws from the situation where Customs is designated by the Attorney General to seize and forfeit under the Controlled Substances Act. In the latter event, Customs—as an agent of the Attorney General—must follow the duties being incorporated in section 881(d) *so long as not inconsistent with the Act*, not the potentially inconsistent duties that the Act contemplates may separately be imposed on Customs by the customs laws.

and forfeiture authority under title 21 did not preclude Customs from pursuing seizures and forfeitures under the customs laws.

## B. *Reorganization Plan No. 2 of 1973*

Customs also relies on Reorganization Plan No. 2 of 1973[20] as a basis for its claim to independent forfeiture authority under 21 U.S.C. § 881. That Plan transferred "all intelligence, investigative, and law enforcement functions" pertaining to "the suppression of illicit traffic in narcotics, dangerous drugs, or marihuana" from Customs to DEA.[21] The Plan also contained a clause (the "retention clause") which provided in part that "[t]he Secretary [of the Treasury] shall retain, and continue to perform [drug intelligence, investigative and enforcement] functions, to the extent that they relate to searches and seizures of illicit narcotics, dangerous drugs, or marihuana or to the apprehension or detention of persons in connection therewith, at regular inspection locations at ports of entry or anywhere along the land or water borders of the United States."[22] Customs contends that it is clear from the language in that clause that Customs officers were intended to enforce all federal drug laws, including section 881, in the border context.[23] The proviso immediately following the retention clause, however, states that any drugs or drug-related evidence seized by Customs at those points "shall be turned over forthwith to the jurisdiction of the Attorney General." Read in conjunction with one another, the retention clause and the proviso that follows it appear to recognize that Customs may legally seize drugs in the context of its role of enforcing the customs laws in the border context, but that any drugs or drug trafficking evidence Customs seizes must be turned over to the Attorney General for appropriate processing. Thus, under the 1973 Reorganization Plan, Customs retained only whatever seizure authority it had under laws other than title 21 with respect to drugs, and the Attorney General maintained control over the forfeiture of drug-related property and the disposition of that forfeited property.

In addition, in light of the fact that the 1973 Reorganization Plan was intended to consolidate federal drug law enforcement responsibility under a single agency within the Department of Justice, the DEA,[24] the most reasonable interpretation of the retention clause is that the words merely make clear that the transfer of drug enforcement functions does not disrupt Customs' authority to make seizures of drugs discovered in the course of Customs' enforcement of the smuggling laws.[25]

---

[20] 3 C.F.R. 1158 (1971–1975), *reprinted as amended in* 5 U.S.C. app at 1355, *and in* 87 Stat. 1091 (1973).

[21] *Id.*

[22] *Id.*

[23] Lane Memo, *supra* note 2, at 4

[24] *See, e g.,* 5 U.S.C. app. at 1357 (Message of the President, transmitting Reorganization Plan No. 2 of 1973 to the Congress, in which the President noted that the newly created DEA would carry out "[t]hose functions of the Bureau of Customs pertaining to drug investigations and intelligence.").

[25] For example, as mentioned earlier, under 19 U S.C. § 1595a, Customs is authorized to seize and forfeit any vessel, vehicle, animal, aircraft, or other thing used to facilitate the importation into the United States of any article contrary to law. Because the importation of illegal drugs into the United States is contrary to law, a boat used

For the foregoing reasons, we find Customs' reliance on Reorganization Plan No. 2 of 1973 as a basis for its claim to independent forfeiture authority under 21 U.S.C. § 881 to be without merit. As we have held in the past, under the 1973 Reorganization Plan "Customs officials have authority [under customs laws and under title 21 when so designated by the Attorney General] only to search for and seize drugs at the borders and ports," and "[s]uspects and drug contraband are to be immediately turned over to DEA for investigation and prosecution."[26] We reached a similar conclusion in our memorandum of June 11, 1985, stating the view that Customs personnel must work under the supervision of the DEA and "may undertake drug enforcement investigations beyond the interdiction of drugs at the border, but only with the specific approval of, and under the supervision of, [the Department of Justice]."[27] We find no case law or subsequent executive or legislative action that would change these conclusions.

## C. *Other Arguments Raised by the Customs Service*

Although we find, based on the language of the statute and Reorganization Plan No. 2 of 1973, that Customs does not have independent forfeiture authority under section 881, we briefly address below additional arguments raised by Customs in support of its assertion of section 881 authority.

### 1. *19 U.S.C. § 1589a*

As evidence that it has section 881 authority in the border context, Customs cites 19 U.S.C. § 1589a(2), which permits a Customs officer to execute and serve "any order, warrant, subpoena, summons, or other process issued under the authority of the United States," and section 1589a(3), which generally provides that a Customs officer may make a warrantless arrest for any federal offense committed in his presence or any federal felony "committed outside the officer's presence if the officer has reasonable grounds to believe that the person to be arrested has committed or is committing a felony." In our June 3, 1986 opinion,[28] we specifically examined the question whether passage of section 1589a, and the nearly identical 19 U.S.C. § 1589,[29] altered the conclusions of this Office in the

---

[25] (.. continued)
to smuggle drugs into the United States may be seized lawfully by Customs under section 1595a. We believe that the retention clause in Reorganization Plan No. 2 of 1973 was intended to cover Customs seizures made pursuant to laws such as section 1595a This interpretation is consistent with our reading of the final clause in section 881(d) which, as we concluded above, was Congress' acknowledgement that, while the Attorney General has exclusive enforcement authority over federal drug violations even at the border, Customs retains its authority over enforcement of the customs laws

[26] Olson Memo, *supra* note 3, at 3. We confirmed this interpretation of the 1973 Reorganization Plan in our memorandum of June 3, 1986 *See* Kmiec Memo, *supra* note 3, at 7–9

[27] Memorandum for Joseph R Davis, Chief Counsel, DEA, from Ralph Tarr, Acting Assistant Attorney General, Office of Legal Counsel, *Re. Authority of the United States Customs Service to Participate in Law Enforcement Efforts Against Drug Violators* (June 11, 1985)

[28] Kmiec Memo, *supra* note 3.

[29] In October 1984, Congress passed the Comprehensive Crime Control Act of 1984, Pub. L No. 98–473, 98 Stat 2056 (1984), and the Tariff and Trade Act, Pub L. No. 98–573, 98 Stat 2988 (1984), which contain two provisions identical for all practical purposes and codified at 19 U S.C. §§ 1589a and 1589, respectively

Olson Memo that Customs does not have independent enforcement authority over title 21 drug offenses. We concluded that (1) the legislative histories behind sections 1589 and 1589a clearly state that the sections were not intended to change Customs jurisdiction over drug offenses or to alter the basic relationship between Customs and DEA established by Reorganization Plan No. 2 of 1973;[30] (2) Congress' intent in passing the sections was to clarify Customs authority in the face of case law questioning the validity of warrants pursued and arrests made by Customs officers in drug cases in which Customs officers act under the supervision of DEA;[31] and (3) while sections 1589 and 1589a acknowledge the authority of Customs officers to execute and serve warrants, and to make arrests, for a wide range of federal crimes, the provisions do not grant Customs additional authority to pursue and prosecute such offenses.[32] We have reexamined the Kmiec Memo in light of Customs' most recent memorandum and reaffirm our conclusions as outlined above. Accordingly, we find that sections 1589 and 1589a do not provide Customs with substantive authority to make seizures and forfeitures pursuant to 21 U.S.C. § 881.

### 2. Common Law Seizure Authority

Customs also argues that Customs officers can make seizures and forfeitures outside of the border context under common law authority, stating that it is a "well settled principle of common law that *anyone* may seize property for forfeiture to the Government and the seizure is valid if the Government adopts the act and proceeds to enforce the forfeiture," and therefore that there is "no reason why a Customs officer should be disabled from making seizures under 21 U.S.C. § 881 when even a private person could perform such seizures."[33] We address later in this opinion Customs' argument that their agents have common law authority for making seizures for forfeiture.[34] However, assuming arguendo that such authority exists, any common law authority is separate and apart from express statutory authority under section 881 and therefore provides no additional support to Customs' position that its agents have independent forfeiture authority under section 881.

---

[30] Kmiec Memo, *supra* note 3, at 5–8

[31] *Id* at 5–7. In *United States v Harrington*, 520 F. Supp. 93, 95 (E D Cal. 1981), the court held that Reorganization Plan No. 2 of 1973 deprived Customs agents of any search or arrest authority with respect to the federal drug laws, and suggested that Customs agents accordingly lacked "secondary authority" to perform drug enforcement searches under the primary responsibility" of the DEA Although the district court's decision ultimately was reversed on appeal, 681 F 2d 612 (9th Cir 1982), *cert denied*, 471 U S. 1015 (1983), Congress clearly had the decision in mind when it passed sections 1589 and 1589a The relevant House Report stated. "Enactment of [this provision] would also make it clear that Customs officers may serve search and arrest warrants for any Federal offense including drug offenses. This would eliminate the problem raised in *U S. v. Harrington*, which . . questioned Customs authority to serve search warrants in joint DEA-Customs investigations away from the border." H R Rep. No. 845, 98th Cong., 2d Sess , pt. 1, at 28 (1984) (citation omitted).

[32] *See* Kmiec Memo, *supra* note 3, at 2.

[33] Lane Memo, *supra* note 2, at 4–5.

[34] *See infra* pp. 278–80.

## 3. 28 U.S.C. § 524(c)(10)

Finally, Customs cites 28 U.S.C. § 524(c)(10) as evidence of Congress' recognition that Customs has seizure authority under section 881 of title 21.[35] Section 524, enacted in 1984, established the Department of Justice Assets Forfeiture Fund, which serves as the depository for moneys realized from profitable forfeitures of property after the payment of certain expenses of forfeiture and sale.[36] Section 524(c)(4) requires "all amounts from the forfeiture of property under any law enforced or administered by the Department of Justice" to be deposited in that fund. Section 524(c)(10) provides:

> For the purposes of this section, property is forfeited pursuant to a law enforced or administered by the Department of Justice if it is forfeited pursuant to —
>
> (A) any criminal forfeiture proceeding;
>
> (B) any civil judicial forfeiture proceeding; or
>
> (C) any civil administrative forfeiture proceeding conducted by the Department of Justice,
>
> *except to the extent that the seizure was effected by a Customs officer or that custody was maintained by the United States Customs Service in which case the provisions of section 613A of the Tariff Act of 1930 (19 U.S.C. 1613a) shall apply.*

28 U.S.C. § 524(c)(10) (emphasis added).

The Customs Service apparently interprets the final clause of section 524(c)(10), underscored above, to demonstrate Congress' understanding that Customs has independent seizure authority under section 881.[37] However, nothing on the face of the provision indicates in the least that Customs has section 881 seizure or forfeiture authority. The general reference in the final phrase of section 524(c)(10) does not specify particular Customs seizure or forfeiture authority, and therefore cannot be said to enlarge or affect Customs' underlying

---

[35] The provision relied upon by Customs, formerly 28 U.S.C. § 524(c)(8), now appears at section 524(c)(10) as a result of amendment by the 1988 Drug Act.

[36] The fund may be used to pay expenses incurred by the Department of Justice and assisting federal, state, and local law enforcement agencies for the detention, inventory, safeguarding, maintenance, and disposal of seized and forfeited property. *See The Attorney General's Guidelines on Seized and Forfeited Property*, as amended, at 17–26 (June 29, 1988)

[37] *See* Lane Memo, *supra* note 2, at 7.

substantive authority in any manner.[38] Accordingly, the language of 28 U.S.C. § 524(c)(10) does not support Customs' position that it has independent section 881 forfeiture authority.

D. *Summary: Section 881 Seizure and Forfeiture Authority*

For the reasons set forth above, we conclude that Customs does not have independent seizure or forfeiture authority under section 881. We base our conclusion on the prior opinions of this Office, the language of section 881(d) as viewed by itself and as examined in the context of section 881, the other provisions of the Controlled Substances Act, and Reorganization Plan No. 2 of 1973. After another thorough review of these laws and their legislative histories, we believe that Congress intended the Attorney General to be the sole administrator of section 881 and the other enforcement provisions of the Controlled Substances Act. In addition, nothing supports Customs' claim of independent forfeiture authority under section 881.

This is not to say, of course, that Customs can never make seizures or forfeit property pursuant to section 881. As we concluded in a prior opinion,[39] the Attorney General in all likelihood has the authority under 21 U.S.C. §§ 873(b) and 965 to provide Customs agents with substantive legal authority to assist the DEA in the enforcement of title 21 drug offenses, including the undertaking of law enforcement functions that Customs agents are not normally empowered to perform but which DEA agents are authorized to perform in executing the Controlled Substances Act.[40] We must emphasize, however, that absent any such grant of authority from the Attorney General, Customs would be operating without statutory authority to enforce title 21 drug offenses. Moreover, as we have cautioned in the past, DEA would be well-advised to exercise particular caution not to permit Customs officials to undertake independent, unsupervised enforcement responsibilities where a successful court challenge would seriously jeopardize a prosecution.[41]

Although our opinion is not intended to have retrospective impact, our conclusion that Customs does not have independent authority under 21 U.S.C. § 881 necessarily raises questions about the legality of any seizures and forfeitures already conducted by Customs under that section without a proper designation from the Attorney General or his designee. A comprehensive analysis of that issue is

---

[38] We discuss the Department of Justice Assets Forfeiture Fund and the Customs Forfeiture Fund in more detail below, when we address the question of which fund should be the depository of proceeds from forfeiture under section 881.

[39] Olson Memo, *supra* note 2, at 5–9.

[40] 21 U.S.C. § 873(b) provides in pertinent part that "when requested by the Attorney General, it shall be the duty of any agency or instrumentality of the Federal Government to furnish assistance, including technical advice, to him for carrying out his functions under this subchapter." *See also* 21 U.S.C. § 965, which adopts the authority of section 873 by reference.

[41] Olson Memo, *supra* note 2, at 9–10. For example, we noted that the Economy Act, 31 U.S.C. § 1535, might prohibit Customs from exercising law enforcement services for DEA to the extent that Customs agents are not generally authorized to perform those services under their own substantive authorizing statute. *Id.* at 8.

beyond the scope of this memorandum. For the reasons discussed below, however, we believe that those seizures and forfeitures may be upheld under a theory of common law seizure authority.

The courts have long recognized that the United States may "adopt" seizures that have been made by private parties or other law enforcement agencies.[42] The United States Supreme Court articulated this principle in *Dodge v. United States*,[43] in which it stated that "anyone may seize any property for a forfeiture to the Government, and that if the Government adopts the act and proceeds to enforce the forfeiture by legal process, this is of no less validity than when the seizure is by authority originally given."[44] The *Dodge* Court based its holding on the rationale that the owner of the seized property suffers nothing as a result of an unauthorized seizure that he would not have suffered if the seizure had been authorized, as the seizure, however effected, brings the res within the power of the court, "which is an end that the law seeks to attain, and justice to the owner is as safe in the one case as in the other.[45]

The reasoning of the *Dodge* Court regarding seizures makes sense given the nature of a forfeiture proceeding. A civil forfeiture action under section 881 is an action in rem, brought against the property itself rather than the wrongdoer, and based on the legal fiction that the property itself is guilty. Just as in the case of a seizure, the forfeiture laws can be said to seek to bring the object within the power of the court. Thus, the *Dodge* Court's conclusion that it makes no difference to the owner who brought his property into the court's jurisdiction is as applicable in a forfeiture action as it is in the case of a seizure.

The holding in *Dodge* with respect to adoptive seizures is still followed today, even in cases involving section 881 forfeiture actions.[46] We must caution, however, that our preliminary view that common law authority may be used to jus-

---

[42] *See, e g , United States v. One Ford Coupe Automobile*, 272 U.S. 321, 325 (1926); *Kieffer v United States*, 550 F. Supp. 101, 103 (E.D. Mich. 1982).

[43] 272 U.S. 530 (1926). *Dodge* involved a proceeding to forfeit a boat for violation of the National Prohibition Act, the initial seizure of which was made by state officers who were not authorized to make the seizure under the Act. *See also United States v One Ford Coupe Automobile*, 272 U.S. at 325 (adoption of seizure by United States for forfeiture permissible even when seizing party lacked authority to make seizure).

[44] *Dodge v. United States*, 272 U.S. at 532.

[45] *Id*

[46] *See, e g , United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 450 (9th Cir. 1983) (in forfeiture action against automobile allegedly used to transport narcotics, jurisdiction of the court was secured by the fact that the res was in the possession of the party authorized to seize when the action was filed), *cert. denied*, 464 U.S. 1071 (1984); *Kieffer v United States*, 550 F. Supp. 101, 103 (E.D Mich. 1982) (upholding section 881 forfeiture action on basis that United States may "adopt" seizure by state officers who do not have seizure authority under section 881). In more recent years, however, courts have increasingly been asked to address the question expressly left open in *Dodge*: whether the fact that the property was obtained as the result of a search and seizure deemed unlawful as invading a person's constitutional rights bars the forfeiture action or deprives the court of jurisdiction to hear it. Although the United States Supreme Court has held that evidence derived from a search which violated the Fourth Amendment is inadmissible in a forfeiture proceeding, *One 1958 Plymouth Sedan v Pennsylvania*, 380 U.S. 693, 702 (1965), the general rule is that improper seizure does not jeopardize the government's right to secure forfeiture if the probable cause to seize the vehicle can be supported with untainted evidence. *See, e g., United States v United States Currency $31,828*, 760 F.2d 228, 230–31 (8th Cir. 1985); *United States v. "MONKEY", A Fishing Vessel*, 725 F.2d 1007, 1012 (5th Cir. 1984); *United States v. United States Currency Totaling $87,279*, 546 F. Supp. 1120, 1126 (S.D. Ga. 1982).

tify past seizures and forfeitures should not be read to suggest continued prospective reliance on that authority by Customs as the basis for future actions under section 881 without appropriate DEA authorization.

## II. Department of Justice and Customs Forfeiture Funds

We turn now to the second issue we have been asked to address: must the proceeds of forfeitures resulting from lawful Customs Service seizures be deposited in the Customs Forfeiture Fund regardless of the statute under which the property was forfeited and regardless of whether the property was forfeited by the Department of Justice? The Department of Justice Assets Forfeiture Fund and the Customs Forfeiture Fund were created to allow those agencies to finance certain aspects of their respective forfeiture actions and other specified law enforcement activities from the proceeds of forfeited assets. *See* 28 U.S.C. § 524(c)(1) (Department of Justice Assets Forfeiture Fund); 19 U.S.C. § 1613b (Customs Forfeiture Fund). Congress provided that both the Justice and Customs Funds would receive amounts from the forfeiture of property under any law enforced or administered by the respective agencies. *See* 28 U.S.C. § 524(c)(4); 19 U.S.C. § 1613b(a), (c).

As we have discussed above,[47] 28 U.S.C. § 524(c)(10) defines what property is forfeited "pursuant to a law enforced or administered by the Department of Justice" for purposes of determining whether the proceeds from the sale of particular forfeited property are to be deposited in the Department of Justice Assets Forfeiture Fund. The definition includes any property forfeited under three specified forfeiture proceedings,[48] "*except to the extent that the seizure was effected by a Customs officer or that custody was maintained by the Customs Service in which case the provisions of section 613A of the Tariff Act of 1930 (19 U.S.C. § 1613a) shall apply*" (emphasis added). The Customs Forfeiture Fund provisions referenced in the clause of section 524(c)(10) underscored above provide in part that the Fund shall be the depository for "all proceeds from forfeiture under any law enforced or administered by the United States Customs Service."[49]

Customs takes the position that the language of 28 U.S.C. § 524(c)(10) provides that the proceeds of forfeiture (even those conducted by the Department of Justice under section 881) arising from any Customs seizure be deposited in the Customs Forfeiture Fund, which is codified at 19 U.S.C. § 1613b.[50] DEA disagrees with that interpretation, maintaining that the clause "refers only to non-drug-related seizures and forfeitures lawfully performed by Customs pursuant to [c]ustoms laws"[51] and that section 881(e) indicates that the Attorney General can-

---

[47] *See supra* pp. 277–78.

[48] The three proceedings specified in section 524(c)(10) are: (1) any criminal forfeiture proceeding; (2) any civil judicial forfeiture proceeding; and (3) any civil administrative forfeiture proceeding conducted by the Department of Justice. 28 U.S.C. § 524(c)(10)(A)-(C)

[49] 19 U.S C § 1613b(c). *See also infra* note 53.

[50] Lane Memo, *supra* note 2, at 7

[51] Hoffman Memo, *supra* note 2, at 10

not deposit moneys or proceeds from a forfeiture conducted by the Department under section 881 in any fund other than the Department of Justice Assets Forfeiture Fund.[52] For the reasons set forth below, we conclude that although the question is not entirely free from doubt, under the most reasonable interpretation of 28 U.S.C. § 524(c)(10), cash or proceeds of property forfeited as a result of a *seizure* made by the Customs Service pursuant to a law administered or enforced by Customs is to be deposited in the Customs Forfeiture Fund rather than in the Department of Justice Assets Forfeiture Fund, even though the property ultimately was *forfeited* by the Department of Justice under section 881.

Section 524(c)(10), standing alone, is unambiguous: the proceeds from forfeitures conducted pursuant to laws enforced or administered by the Department of Justice are to be placed in the Department of Justice Assets Forfeiture Fund *unless* the property was seized or custody maintained by the Customs Service, in which case the proceeds from the forfeiture are to be placed in the Customs Forfeiture Fund. Under section 524(c)(10), it appears that Customs may receive the proceeds from the forfeiture of the property it seizes even if it has no authority to forfeit that property. In addition, the clause applies to any seizure made by Customs, not just to nondrug-related seizures.

When, however, section 524(c)(10) is read in conjunction with 19 U.S.C. § 1613b, to which it makes specific reference, the meaning of the exception clause is not entirely clear. Section 1613b(a), establishing the Customs Forfeiture Fund,[53] provides, as amended by the 1988 Drug Act, that the Fund "shall be available to the United States Customs Service, subject to appropriation, with respect to seizures and forfeitures by the United States Customs Service and the United States Coast Guard under any law enforced or administered by those agencies." Similarly, section 1613b(c) provides for deposit in the fund of "all proceeds from forfeiture under any law enforced or administered by the United States Customs Service or the United States Coast Guard."

We believe that the final clause of 28 U.S.C. § 524(c)(10) clearly governs

---

[52] *Id*

[53] As a preliminary matter, we note that the reference to the Customs Forfeiture Fund provisions in the final clause of section 524(c)(10) specifically refers to "the provisions of section 613A of the Tariff Act of 1930 (19 U.S.C. § 1613a)." However, 19 U.S.C. § 1613a, which was passed in 1984, Pub L. No. 98–473, 98 Stat. 2054, was repealed in 1986, Pub L. No 99–514, 100 Stat. 2924–25. The fund was recreated in 1987, Pub. L. No. 100–71, tit. I, 101 Stat. 438, and presently is codified at 19 U.S.C. § 1613b. Neither section 524(c)(10) nor its predecessor provision, section 524(c)(8), was ever amended to reflect these changes and, as a result, section 524(c)(10) now refers to a Customs Forfeiture Fund that is no longer in existence Thus, under a literal reading, the exception clause in section 524(c)(10) has no force and does not govern any deposits into the current Customs Forfeiture Fund.

Although in such cases no construction can ever be entirely free from doubt, Congress can be presumed not to have intended an absurd result. Rather, it can fairly be concluded that Congress intended to incorporate an accurate reference to the Customs Forfeiture Fund provision in 28 U S.C. § 524(c)(10). We believe this is true even though Congress' recreated Customs Forfeiture Fund is not codified at 19 U.S.C. § 1613a, as referenced in section 524(c)(10), but rather appears at section 1613b. *See United Steelworkers of Am v. Weber*, 443 U.S. 193, 201 (1979), (citing *Holy Trinity Church v. United States*, 143 U.S. 457, 459 (1892)). We note further that although the amendments to section 524 contained in the 1988 Drug Act perpetuate the miscitation to the Customs Forfeiture Fund, the 1988 Drug Act, in section 7364, correctly cites 19 U.S.C. § 1613b as the provision that codifies the Customs Forfeiture Fund.

those cases in which Customs has explicit forfeiture authority but the Justice Department, by law, must play a role in the forfeiture of property seized by Customs. For example, the Department of Justice, through the United States Attorneys, must handle certain civil judicial forfeiture proceedings in federal court of property seized by Customs under the customs laws.[54] Thus, there is an overlap in the definitions of "those laws enforced or administered" by Customs and "those laws enforced or administered" by the Department of Justice because in certain instances Customs has authority over the seizures and the Department of Justice has authority over the forfeitures. The exception clause in section 524(c)(10) addresses the question of which fund should be used in such situations by providing that when a Customs officer seizes property or maintains custody of property under the customs laws, the proceeds of that forfeiture should be placed in the Customs Forfeiture Fund, regardless of whether Customs conducted the forfeiture.

The more difficult question is whether the final clause also pertains to cases in which Customs has seized property pursuant to the laws it enforces, but where the property is forfeited by the Department of Justice, either administratively or judicially, under 21 U.S.C. § 881 or another forfeiture statute under which Customs has no forfeiture authority. As section 1613b(c) refers only to *forfeitures* under "any law enforced or administered" by Customs, it can be argued that Congress intended that the Customs Forfeiture Fund be the depository only for proceeds from property that actually was forfeited under the customs laws. In light of our conclusion above that only the Department of Justice has independent statutory authority to seize and forfeit property under 21 U.S.C. § 881, such an interpretation necessarily would require that the proceeds from all section 881 forfeitures be placed in the Department of Justice Assets Forfeiture Fund. However, we believe that interpretation would be contrary to the language of the exception clause in section 524(c)(10), since it would prevent Customs from receiving proceeds from the forfeiture of property that it had *seized* under the customs laws. Accordingly, we conclude that the proceeds of property seized or held in custody by Customs under the customs laws must be placed in the Customs Forfeiture Fund even though the property was forfeited by the Department of Justice under 21 U.S.C. § 881.

Our interpretation of the exception clause is consistent with Reorganization Plan No. 2 of 1973, which reflects legislative and executive branch recognition of Customs' traditional law enforcement role at the border. As we have already discussed above, in Reorganization Plan No. 2 of 1973 Congress left undisturbed Customs' authority under the customs laws to perform all intelligence, investigative and law enforcement functions to the extent that they relate to searches and seizures of drugs at regular inspection locations at ports of entry or the bor-

---

[54] Customs must refer civil forfeiture cases to the United States Attorney (1) when the property seized exceeds $100,000 in value and is not an illegally imported item or a conveyance used to transport a controlled substance, or (2) when a claim and cost bond has been filed for the property in an administrative forfeiture proceeding *See* 19 U.S.C. §§ 1607, 1608, 1610.

der. Thus, Customs has retained search and seizure authority with respect to illegal drugs and related evidence encountered by Customs in the course of its enforcement responsibilities under the customs laws. In light of Congress' intent that Customs maintain those particular aspects of its traditional law enforcement role at the border, it is reasonable to interpret the words "seizure" and "custody" in section 524(c)(10) to refer to the functions that Customs expressly retained under Reorganization Plan No. 2 of 1973, that is, search and seizure authority under the customs laws.[55]

Moreover, to interpret the phrase "any law enforced or administered by the United States Customs Service" to include statutes under which Customs has either seizure or forfeiture authority, but not necessarily both, is consistent with the fact that seizure and forfeiture are separate and distinct law enforcement tools.[56] Thus, statutes under which Customs only has seizure authority clearly fall within the definition of "any law enforced or administered by the United States Customs Service." If Customs has *neither* seizure *nor* forfeiture authority, however, as we conclude it does not under section 881, the proceeds from seizures and forfeitures premised on that statute alone are to be deposited in the Department of Justice Assets Forfeiture Fund. This is true even if Customs has been properly designated by the Attorney General or his designee to exercise authority under that statute. Of course, the Attorney General has discretion to award the property to Customs in such joint enforcement efforts.[57]

One other point is worth mentioning. Section 881(e)(1), as amended by the 1988 Drug Act, provides that when property is forfeited under the Controlled Substances Act, the Attorney General has five options with respect to disposition of that property: he may (1) retain the property for official use or transfer the custody or ownership of the property to any federal agency, or any state or local law enforcement agency that participated directly in the seizure or forfeiture;[58] (2) sell the property; (3) require the General Services Administration to dispose of the property; (4) forward it to DEA for disposition; or (5) under certain circumstances, transfer forfeited personal property or the proceeds of the sale of forfeited personal or real property to any foreign country that participated in the seizure or forfeiture.[59] Pursuant to 21 U.S.C. § 881(e)(2)(B), the provisions of the Department of Justice Forfeiture Fund in 28 U.S.C. § 524(c) only apply to forfeitures under the Controlled Substances Act in the event of a cash seizure or

---

[55] This interpretation of the final clause in section 524(c)(10) also is consistent with the legislative history of the funds, which reflects Congress' understanding that Customs has a role to play in drug enforcement efforts. *See, e g ,* S. Rep No. 225, 98th Cong., 1st Sess. 217–18 (1983).

[56] Most of the seizure and forfeiture provisions used by Customs in drug-related cases are contained in the part of the Tariff Act of 1930 entitled "Enforcement Provisions." *See, e.g.,* 19 U.S C §§ 1590, 1595, 1595a.

[57] *See infra* note 61.

[58] As amended by the 1988 Drug Act, section 881(e)(3) requires the Attorney General to assure that any property transferred to a state or local law enforcement agency under this provision of section 881(e)(1) has a value that bears a "reasonable relationship to the degree of direct participation" by the agency, and, for fiscal years beginning after September 30, 1989, that the transfer is not undertaken in order to circumvent any prohibition on forfeitures, or limitations on the use of forfeited property, under state law.

[59] 21 U.S C. § 881(e)(1)(A)-(E)

the Attorney General's exercise of his option under 21 U.S.C. § 881(e)(1)(B) to sell the forfeited property.[60] Thus, section 524(c)(10) does not limit the Attorney General's authority under section 881(e) to retain, sell, or transfer property forfeited under section 881, and was intended to apply only to the Attorney General's authority over the treatment of forfeited property which could ultimately be deposited (as cash) in the Department of Justice Assets Forfeiture Fund. Thus, Customs may receive the proceeds from property seized by Customs under the customs laws and forfeited by the Department of Justice under section 881 only if the Attorney General does not first exercise his options under section 881(e) to retain the property for official use, transfer the property, or otherwise dispose of the forfeited property under section 881(e)(1).[61]

It is important to note, moreover, that even if proceeds from section 881 forfeitures are to be deposited in the Customs Forfeiture Fund in accordance with 28 U.S.C. § 524(c)(10), the Department of Justice first can collect costs for all property expenses of the forfeiture proceeding and sale, including expenses of maintenance and court costs. Section 881(e)(2)(B) provides that, unless the forfeiture was conducted by the Postal Service, the Attorney General shall deposit in accordance with 28 U.S.C. § 524(c) all cash and proceeds remaining after payment of such expenses.[62]

## Conclusion

We conclude that Customs does not have independent authority to make seizures or forfeitures pursuant to 21 U.S.C. § 881. Accordingly, Customs agents should make seizures and forfeit property pursuant to that section only when they do so under the supervision of the DEA and by direct or derivative designation of the Attorney General. We further conclude that property forfeited after a Customs seizure is to be deposited in the Customs Forfeiture Fund when the seizure

---

[60] 21 U.S.C. § 881(e)(2)(B), as amended by the 1988 Drug Act, provides:

The Attorney General shall forward to the Treasurer of the United States for deposit in accordance with section 524(c) of title 28, any amounts of such moneys and proceeds remaining after payment of the expenses provided in subparagraph (A), except that, with respect to forfeitures conducted by the Postal Service, the Postal Service shall deposit in the Postal Service Fund, under section 2003(b)(7) of title 39, United States Code, such moneys and proceeds.

Subparagraph (A), in turn, only applies to moneys forfeited under this title and sales conducted under section 881(e)(1)(B).

[61] Of course, under 21 U.S.C. § 881(e)(1)(A), as amended by the 1988 Drug Act, the Attorney General has explicit authority to transfer the custody or ownership of any forfeited property to any federal agency, or to any state or local agency that participated directly in the seizure or forfeiture, pursuant to section 616 of the Tariff Act of 1930, ch. 497, 46 Stat. 590 (1930) (codified as amended at 19 U.S.C. §§ 1202–1677). Thus, where a Customs officer has been working in cooperation with DEA in a joint investigation, or has been working under designation by the Attorney General, and property is seized and forfeited by the Department of Justice under section 881, it is within the Attorney General's discretionary authority to transfer that tangible property to the Customs Service

[62] Moreover, 19 U.S.C. § 1524 requires that reimbursable charges paid out of "any appropriation" for collecting Customs revenue shall be refunded.

284

was made by the Customs Service under the customs laws, even though the property ultimately was forfeited by the Department of Justice, either administratively or in a federal district court proceeding.[63]

DOUGLAS W. KMIEC
*Assistant Attorney General*
*Office of Legal Counsel*

---

[63] Thus, to return to one of the practical examples mentioned above, Customs may lawfully stop and search a vessel pursuant to 19 U.S.C. § 1581(a), find illegal drugs on board and seize the vessel under 19 U.S.C. § 1581(e). According to Reorganization Plan No. 2 of 1973, Customs must turn over to DEA the drugs and any related evidence, that is, the boat. DEA or the United States Attorney may then forfeit the boat under 21 U.S.C. § 881 or allow Customs to forfeit the boat under the smuggling laws. If the boat is forfeited under section 881, the Attorney General may retain the boat for official use, sell the boat or transfer it to the Customs Service. 21 U S.C. § 881(e)(1). If the Attorney General decides to sell the boat pursuant to section 881(e)(1)(B), the proceeds of sale remaining after payment of property management expenses to the Justice Department are to be transferred to the Customs Forfeiture Fund in accordance with 28 U.S.C. § 524(c)(10) because Customs made the lawful seizure of the property.